IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES B. SECREST,

        Plaintiff,

  v.                                   Civil Action 2:16-cv-113
                                        Chief Judge Edmund A. Sargus, Jr.
                                        Magistrate Judge Jolson

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

REPORT AND RECOMMENDATION

      Plaintiff James B. Secrest filed this action under 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits and supplemental social security income. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's statement of errors be **OVERRULED** and judgment be entered in favor of the Commissioner.

I. BACKGROUND

A. Prior Proceedings

      Plaintiff applied for disability insurance benefits and supplemental social security income on March 22, 2012, alleging disability beginning on August 28, 2009. (Doc. 12, Tr. 199–211, PAGEID #: 244–56). His claim was denied initially and on reconsideration. (*Id.* at PAGEID #: 174–80, 184–95). Plaintiff requested a hearing, and the Administrative Law Judge (hereinafter "the ALJ") denied benefits. (*Id.* at PAGEID #: 82–98). The ALJ found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (*Id.* at

PAGEID #: 87).  Next, he determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 28, 2009.  (*Id.*).   In the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had the following severe impairments: arthrosis of the left ankle and residuals from left ankle fusion.  (*Id.*).  The ALJ found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments.  (*Id.* at PAGEID #: 88).

The ALJ further found that Plaintiff retained the residual functional capacity to perform sedentary work with additional limitations.  (*Id.* at PAGEID #: 88–89).  The ALJ ultimately found Plaintiff could perform jobs existing in the national economy in significant numbers and Plaintiff thus was not disabled within the meaning of the Social Security Act and denied benefits on July 21, 2014.  (*Id.* at PAGEID #: 93–95).  That decision became the Commissioner's final decision on December 16, 2015, when the Appeals Council denied Plaintiff's request for review.  Plaintiff then brought this action.  (*See* Doc. 12 (administrative record); Doc. 13 (statement of errors); Doc. 17 (the Commissioner's response); Doc. 18 (Plaintiff's reply)).

**B. The Record**

  **1. Plaintiff's Testimony**

Plaintiff testified at the hearing on June 26, 2014.  He testified that a three-wheeler accident in 1992 harmed his left leg and ankle and that over the course of the next 17 years, "the conditions and the pain and everything got to the point where [he] couldn't do [his] job anymore."  (*Id.* at PAGEID #: 104).  He also testified that he worked primarily as a truck driver during the past 15 years and attended classes to obtain his associate's degree from 2009 until 2011.  (*Id.*)  As part of those classes, he participated in a welding lab, which required him to be

2

on his feet for four to five hours per day. (*Id.* at PAGEID #: 105). From November 2011 until February 2012, he attempted to work a factory job, but Plaintiff testified that the pain and swelling in his foot were too great to continue the employment. (*Id.* at PAGEID #: 107). Plaintiff stated that he accompanies his daughters while they hunt, but he can no longer participate in outdoor activities. (*Id.* at PAGEID #: 113–14). He likewise testified that he is unable to perform household chores. (*Id.* at PAGEID #: 114). Plaintiff described his pain as feeling like "someone took a metal rod that was heated cherry red and shoved it through the bottom of my foot all the way up to my lower back." (*Id.* at PAGEID #: 109). For relief, he elevates his foot and takes Ibuprofen and Vicodin. (*Id.* at PAGEID #: 116–17).

    **2. Relevant Medical Records And Assessments**

The medical records show that Plaintiff complained of left calf and ankle pain in June 2009, but, at that time, he could not think of an aggravating event. (Doc. 12, Tr. 308, PAGEID #: 354). An examination revealed no swelling, but there was tenderness in the posterior aspects of the ankle and calf muscle. (*Id.*). He was discharged with Ibuprofen, Medrol pack, and Vicodin, and instructed to "follow up[with the doctor] in a couple of days if not back to normal." (*Id.* at PAGEID #: 355).

The next medical record is dated August 6, 2010. (*Id.* at PAGEID #: 359). Plaintiff again complained of left ankle pain and, this time, noted the 1992 three-wheeler accident. (*Id.*) He was assessed with osteoarthrosis that was described as "nothing significantly severe." (*Id.* at PAGEID #: 360). An x-ray of Plaintiff's left foot performed on August 6, 2010, revealed no evidence of acute fracture, dislocation, or significant arthritic changes. (*Id.* at PAGEID #: 361).

According to the records, Plaintiff reported on November 29, 2010, that his leg pain had worsened. (*Id.* at PAGEID #: 384). That record also notes "[d]eer hunting this am and going back today." (*Id.*) On October 21, 2011, Plaintiff reported that he was satisfied with the medications he was taking and did not want to try anything different at that time. (*Id.* at PAGEID #: 372). On March 20, 2012, however, he complained of left ankle pain associated with limping, nocturnal pain, popping, and swelling with "no relieving factors." (*Id.* at PAGEID #: 369).

A podiatrist noted on March 29, 2012 that an examination of Plaintiff's lower extremities confirmed pain in the subtalar joint and ankle of the left as compared to the right. (*Id.* at PAGEID #: 364). Plaintiff was also noted to have a leg-length difference, which was greater on the left. (*Id.*). An MRI of the left ankle performed on April 16, 2012, showed findings in the middle subtalar joint suggestive a non-osseous coalition accompanied by arthrosis. (*Id.* at PAGEID #: 363). There was also evidence of a chronic partial tear of the anterior syndesmosis with scarring and small joint effusions. (*Id.*).

Plaintiff had ankle surgery on May 25, 2012. (*Id.* at PAGEID #: 403). Specifically, he underwent a subtalar joint fusion with Steinmann pins, left lateral ankle stabilization, and intraoperative fluoroscopy on May 25, 2012. (*Id.* at PAGEID #: 403). He subsequently received physical therapy. (*Id.* at PAGEID #: 405–15). Treatment records indicate that he ambulates with the assistance of a cane. (*See id.* at PAGEID #: 446–44). On April 1, 2014, it was noted that a physical examination of the left foot and ankle showed moderate to severe pain and tenderness, and a decreased range of motion. (*Id.* at PAGEID #: 437). At that

4

appointment, Plaintiff reported that his medications seem to be "helping to improve his symptoms and lifestyle." (*Id.*).

Judith Brown, M.D. examined Plaintiff on January 13, 2014. (*Id.* at PAGEID #: 419–35). Plaintiff reported to Dr. Brown a twenty-year history of pain and swelling in the left foot and ankle. (*Id.* at PAGEID #: 420). Plaintiff also reported that he takes Vicodin, which makes his pain go from a 15 to 5 in intensity. (*Id.*). Plaintiff was described as ambulating with an antalgic gait and able to walk short distances without a cane. (*Id.* at PAGEID #: 422). An examination of the extremities revealed normal findings and no edema. (*Id.*). Tenderness with swelling over the medial and anterior ankle and plantar aspect of the left ankle; mild soft tissue swelling was noted; and muscle atrophy of the left calf were noted. (*Id.* at PAGEID #: 423). It was also noted that he could not stand on his left leg alone. (*Id.* at PAGEID #: 424). Decreased pinprick and light touch sensation was noted over the left lateral foot and ankle and all sensory modalities elsewhere were well preserved. (*Id.*). An x-ray of the left ankle revealed no acute bony abnormality and a subtalar fusion with fracture of one of two fixation pins. (*Id.* at PAGEID #: 435). Dr. Brown assessed Plaintiff with chronic left ankle pain status post-ankle fusion and asthma/probable COPD. (*Id.* at PAGEID #: 424).

Following the consultative examination, Dr. Brown opined that the claimant could occasionally lift up to 20 pounds, could occasionally carry up to 10 pounds, could sit for 3 hours at one time and up to 8 hours in an 8-hour workday, could stand for 20 minutes at one time and for one hour in an 8-hour workday, could walk for 10 minutes at one time and for up to one hour in an 8-hour workday, requires the use of a cane when ambulating more than 20 feet, could occasionally use the right foot for operation of foot controls, but never use the left

foot, could frequently stoop, could occasionally kneel or crawl, could never climb stairs, ramps, ladders, or scaffolds, balance, or crouch, could frequently operate a motor vehicle, be exposed to humidity and wetness, or extreme heat, and could never be exposed to unprotected heights, moving mechanical palls, dusts, odors, fumes, and pulmonary irritants, or extreme cold. (*Id.* at PAGEID #: 429–34). As for performing daily activities, Dr. Brown checked the following boxes:

**VIII. PLEASE PLACE A CHECK IN APPROPRIATE BOXES BASED SOLELY ON THE CLAIMANT'S PHYSICAL IMPAIRMENTS**

| ACTIVITY | YES | No |
|---|---|---|
| Can the individual perform activities like shopping? | ✓ | |
| Can the individual travel without a companion for assistance? | ✓ | |
| Can the individual ambulate without using a wheelchair, walker, or 2 canes or 2 crutches? | ✓ | |
| Can the individual walk a block at a reasonable pace on rough or uneven surfaces? | | ✓ |
| Can the individual use standard public transportation? | ✓ | |
| Can the individual climb a few steps at a reasonable pace with the use of a single hand rail? | | ✓ |
| Can the individual prepare a simple meal & feed himself/herself? | ✓ | |
| Can the individual care for personal hygiene? | ✓ | |
| Can the individual sort, handle, use paper/files? | ✓ | |

(*Id.* at PAGEID #: 434).

A statement from a physician's assistant, Zachary Rich, is also part of the record. (*Id.* at PAGEID #: 417–18). Mr. Rich completed a physical capacity evaluation on July 31, 2013, noting that Plaintiff could stand for 15 minutes at one time and for 30 minutes in an 8-hour workday, could walk for 5 minutes at one time and for 30 minutes in an 8-hour workday, could sit for 8 hours at one time and for 8 hours in an 8-hour workday, could occasionally lift up to 20 pounds, could use his hands for repetitive simple grasping, pushing and pulling, and fine manipulation, could use the right foot for repetitive movements as in operating foot controls,

6

could frequently bend, could occasionally crawl, and could never squat, climb steps, or climb ladders. (*Id.*).

Finally, two state agency reviewing physicians, Doctors Eli Perencevich and Esberdado Villanueva, reviewed Plaintiff's medical records and found him not disabled. (*Id.* at PAGEID #: 122–124; *id.* at PAGEID #: 142–145).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

This case presents two issues for review: (1) whether substantial evidence supports the ALJ's conclusion that Plaintiff's ankle condition failed to meet Listing 1.02(A); and (2) whether this matter should be remanded pursuant to sentence six.

### A. Listing 1.02(A)

Plaintiff asserts that the ALJ should have found that his left ankle problems satisfy Listing 1.02 (major dysfunction of a joint). (Doc. 14, 7–12). In particular, Plaintiff claims that he satisfied paragraph "A" criteria of Listing 1.02. (*Id.*). If a claimant's impairment meets the description of a Listing or its equivalent, the claimant will be found disabled. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "[F]or a claimant to show that his impairment matches a listing it must meet all of the specified medical criteria," *Zebley*, 493 U.S. at 530, and it is not enough that a claimant comes close to meeting or "almost" meets the requirements of a Listing, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986). Put another way, an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Zebley*, 493 U.S. at 529–30. As such, the claimant bears the burden of establishing every element of the specified criteria. *Bowen*, 482 U.S. at 146 n.5; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

> In relevant part, Listing 1.02 requires major dysfunction of a joint:
>
> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. part 404, subpt. P, App. 1, § 1.02. Section 1.00B2b explains that an:

> (1) [i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning

8

>   (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities[].
>   (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* § 1.00B2b(1)-(2).

The parties do not dispute that the ALJ considered Listing 1.02; they disagree only as to whether substantial evidence supports the ALJ's ultimate conclusion that Plaintiff's ankle ailments do not satisfy the Listing. In coming to his conclusion, the ALJ relied on treatment and examination notes showing that Plaintiff could walk short distances without a cane, could walk longer distances with one cane, and did not require an assistive device that limits functioning in both arms. (Doc. 12, Tr. 45, PAGEID #: 90 (citing *id.* at PAGEID #: 393–435)).  The treatment notes that the ALJ considered and cited support for his conclusion that Plaintiff could walk without the use of assistive devices that limited the functioning of both his upper extremities.

The ALJ also considered Plaintiff's own testimony and reports in the record of Plaintiff's daily activities. In particular, the ALJ cited evidence showing that after Plaintiff's alleged onset date of August 28, 2009, Plaintiff accompanied his daughters hunting (Doc. 12, Tr. 44, PAGEID #: 89 (*see id.* at PAGEID #: 113)), attended four- to five-hour welding classes (*id.* at PAGEID #: 92 (*see id.* at PAGEID #: 104–05)), and sought out employment as a welder or truck driver (*id.* (*see id.* at PAGEID #: 108–09)).  This evidence supports the ALJ's conclusion that Plaintiff's

9

walking problems were not so severe that he could not "initiate, sustain, or complete activities" to meet the definition of an "inability to ambulate effectively" as required for Listing 1.02(A). *See* 20 C.F.R. part 404, subpt. P, App. 1, §§ 1.00B2b(1)-(2), 1.02(A).

Finally, the ALJ considered the opinions of consultative examining physician Judith Brown and state agency reviewing physicians Eli Perencevich and Esberdado Villanueva. (*See, e.g.*, Doc. 12, Tr. 46–47, PAGEID #: 91–92). Upon examination, Dr. Brown determined that Plaintiff could "ambulate without using a wheelchair, walker, or 2 canes or 2 crutches." (*Id.* at PAGEID #: 434). Dr. Brown also found that Plaintiff was capable of performing a number of daily activities, including: shopping, travelling without a companion for assistance, using standard public transportation, preparing simple meals and feeding himself, caring for his hygiene, and sorting, handling, and using paper or files. (*Id.*) For their part, Doctors Perencevich and Villanueva both reviewed Plaintiff's medical records throughout the relevant disability period in consideration of Listing 1.02 and found that Plaintiff was not disabled. (*Id.* at PAGEID #: 122–24; *id.* at PAGEID #: 142–45).

In sum, substantial evidence supports the ALJ's determination that Plaintiff's impairment does not satisfy Listing 1.02(A). Plaintiff argues that substantial evidence supports (or might support) a different conclusion, but that is not the inquiry for this Court. Instead, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation and quotation omitted). Accordingly, Plaintiff's first assignment of error is without merit.

### B. Sentence Six Remand

Plaintiff next argues for a remand pursuant to sentence six of 42 U.S.C. § 405(g). In particular, Plaintiff asks this Court to remand for consideration of Dr. Michael Sayegh's treatment note (dated July 24, 2014) and his assessment of Plaintiff's physical limitations (dated September 2, 2014) as well as Dr. Richard Ward's physical-limitations assessment (dated September 18, 2014). (Doc. 13 at 13–14). As a reminder, the ALJ issued his decision in this matter on July 21, 2014. (Doc. 12, Tr. 49, PAGEID #: 94).

A social security case can be remanded "for further administrative proceedings" where "a claimant shows that the evidence is new and material, and that there was good cause for not presenting [the evidence] in the prior proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]he burden of showing that a remand is appropriate is on the claimant."). Both prerequisites must be satisfied. *Id.* Here, the Court need not resolve the question as to whether the evidence is "new and material" because Plaintiff has not met the good cause standard.

The Sixth Circuit "takes a hard[] line on the good cause test with respect to timing and thus requires the claimant to give a valid reason for his failure to obtain evidence prior to the hearing." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012). Specifically, a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner in order to demonstrate good cause. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter*, 479 F. App'x at 725 . Good cause is shown only if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability. *See Koulizos v. Sec'y of HHS*, No. 85-1654, 1986 WL

11

17488, at *2 (6th Cir. Aug. 19, 1986); *Lewis v. Astrue*, No. 07-145, 2008 WL 4186325, at *9 (S.D. Ohio Sept. 2, 2008) (citations omitted).

With respect to Dr. Sayegh's treatment note and assessment, Plaintiff does not offer a fulsome explanation for why good cause exists for the failure to obtain and submit this evidence before the ALJ issued his decision. (Doc. 13 at 16–17). Indeed, Plaintiff has not explained a single obstacle that prevented him from obtaining an opinion from Dr. Sayegh prior to the ALJ's decision. Plaintiff merely characterizes the delay of Dr. Sayegh's note and assessment as "an unfortunate circumstance of timing" and states that it is "regrettable" that it was "tardy." (*Id.*; Doc. 18 at 4). The fact that the evidence did not exist prior to the ALJ's decision is insufficient to satisfy the "good cause" requirement, *Courter*, 479 F. App'x at 725, and without more, good cause has not been established. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (requiring a claimant to demonstrate "'reasonable justification for failure to acquire and present evidence for inclusion in the hearing before the ALJ'") (quoting *Foster*, 279 F.3d at 357); *see also Willis*, 727 F.2d at 554.

Plaintiff also fails to identify any obstacle that prevented him from obtaining Dr. Ward's evidence prior to the ALJ's decision. He instead argues that good cause exists for the delay because it "would not have been necessary had the ALJ reasonably addressed the preponderance of the record indicating that the [Listing 1.02(A)] was met." (Doc. 13 at 17); *see also* (Doc. 18 at 4 (arguing that "[o]btaining an additional opinion came only after and in reaction to the ALJ's muddled, self-serving, and incomplete handling of Dr. Brown's opinion")). In other words, Plaintiff did not solicit an opinion from Dr. Ward before the hearing because Plaintiff thought he would win without it. That is not good cause. *See Koulizos*, 1986 WL 17488, at *2; *Lewis*, 2008 WL 4186325, at *9 (finding no good cause when "[n]othing in the record . . . suggest[ed] that Plaintiff ever saw [the doctor] for any

12

purpose other than obtaining the opinion now offered as the basis for her remand motion [and] Plaintiff's own motion for remand and reply both implicitly acknowledge[d] that Plaintiff sought [the] opinion specifically and solely for the purpose of proving disability."); *see also Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (explaining that the good cause requirement would be meaningless if every time a claimant lost before the agency he was free to seek out a new expert witness who might better support his position). Accordingly, the Court finds the requirements for a sentence six remand not satisfied here.

## IV. RECOMMENDED DISPOSITION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of the Commissioner.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date:  January 6, 2017                                /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE